**2025 UT App 185**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROWDY LEE THOMPSON,
Appellant.

Opinion
No. 20240027-CA
Filed December 18, 2025

Fourth District Court, Provo Department
The Honorable Sean M. Petersen
No. 071403619

Randall W. Richards and Benjamin R. Richards,
Attorneys for Appellant

Derek E. Brown and Karen A. Klucznik,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

ORME, Judge:

¶1 Nearly 20 years ago, Rowdy Lee Thompson pled guilty to sexually abusing a minor. After completing a jail sentence and probation, he sought to take advantage of a new Utah statute which allows an offender who was under 21 at the time, and whose crime did not involve force or coercion, to be removed from the sex offender registry after 10 years. Thompson filed a motion to clarify his sentence, asking the district court to make a specific finding that his offense did not involve force or coercion. The court denied the motion, determining that, based on the victim's statement, it could not make such a finding.

¶2      On appeal, Thompson takes issue with this determination. He argues the court relied on irrelevant factors while ignoring relevant ones. He also contends the court plainly erred in accepting—or, in the alternative, that his trial counsel (Counsel) was ineffective in failing to object to—a misstatement of the law advanced by the prosecutor. We disagree and affirm.

BACKGROUND

¶3      In 2007, 19-year-old Thompson and his roommates invited a group of girls to their apartment. One of the girls—13-year-old Anna[1]—later provided a written statement to police in which she claimed that Thompson flirted with her as she sat on the couch in the apartment. Anna stated that she and Thompson then went into his bedroom where he kissed her and suggested that they have sex. She also stated that when she told Thompson "no," he called her a "fucking bitch," pushed her down onto the bed hard enough to make her head hit the wall, got on top of her, and raped her.

¶4      Thompson was charged with rape of a child or, alternatively, object rape of a child, both first-degree felonies. But he later pled guilty to one charge of sexual abuse of a child, a second-degree felony. The statement in support of the guilty plea laid out the elements of the offense, stating,

> [A]t the time and place alleged, the Defendant, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, touched the genitalia of a female child with his hand with the

---

1. A pseudonym.

intent to arouse or gratify the sexual desire of the Defendant.

¶5     The plea agreement further indicated,

> The Defendant has been allowed to plead the facts as supported by Defendant's statement to the police when arrested, a psycho-sexual evaluation and polygraph examination which comport with Defendant's version of the event. The Prosecution and the Defense find that such an agreement is appropriate in light of the discrepancies in the victim's statement and the results of the aforementioned psycho-sexual evaluation and polygraph.

Accordingly, the plea was based on Thompson's version of events, which was as follows:

> [A]t the time and place alleged, the Defendant met the victim at his college apartment. The Defendant and the victim played video games and then went to Defendant's bedroom where Defendant touched the victim's genitals with his hand with the intent to arouse or gratify his sexual desire.

¶6     The court accepted the plea, and Thompson was sentenced to a suspended prison term, 310 days in jail, and 36 months of probation. In 2011, Thompson's probation was successfully terminated. Due to the nature of his offense, he was placed on the sex offender registry.

¶7     In March 2022, Thompson moved for a two-step reduction of his sentence from a second-degree felony to a class A misdemeanor. But the parties eventually concluded that the reduction was "prohibited." So in April 2023, Thompson filed a motion to clarify his sentence. At that time, section

77-41-105(3)(c)(iii)(A) of the Utah Code provided that "an offender who commits the offense when the offender is under 21 years of age" and whose offense "does not involve force or coercion" may, pursuant to section 77-41-105(3)(a), be removed from the sex offender registry "10 years after termination of sentence." *See* Utah Code Ann. § 77-41-105(3)(iii)(A) (LexisNexis 2023).[2] Thompson, who was under 21 at the time of the offense and who had been registered for over 10 years by the time he filed his motion to clarify, asked the district court to find that his offense did not involve force or coercion so he could be removed from the registry.

¶8     At a hearing on the motion to clarify, Thompson focused on the fact that force and coercion were not elements of the offense of sexual abuse of a child. He argued that his guilty plea to that offense was based on his own version of events, which did not include any force or coercion. And he pointed out that the results of his psychosexual evaluation and polygraph examination comported with this version of events. He also urged the court not to rely on Anna's written statement in determining whether the offense involved force or coercion.

¶9     The prosecutor argued that a finding regarding force or coercion should not rely on the statutory elements of the charged offense, stating, "[I]f I'm not mistaken, I don't believe that the word 'force' appears in any of the elements of any child sex abuse statute: Rape of a child, object rape of a child, sex abuse of a child, aggravated sex abuse of a child. And I'm almost certain that that word 'force' is not included." The State also argued that, based on Anna's written statement to the police, the court could not find that Thompson's abuse of Anna did not involve force or coercion.

---

2. The relevant provisions have since been repealed and re-codified. Throughout this opinion we cite the provisions in effect at the time the court ruled on Thompson's motion.

¶10    In an oral ruling, the court[3] concluded,

> The Court is in receipt of the victim's written statement. The statement does indicate and alleges that the defendant used force and/or coercion. As it relates to this matter, the facts described by the victim preclude the defendant from receiving modification of his current lifetime registration requirement under Subsection (3)(c)(iii) as the Court cannot make a finding based upon its review that the offense does not involve force or coercion.

Thus, the court denied Thompson's motion to clarify—the decision from which he now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶11    Thompson argues the district court ignored certain factors and improperly considered others—namely, Anna's written statement—in reaching its conclusion regarding force or coercion. The parties disagree about the applicable standard of review. Thompson argues this is an issue reviewed for abuse of discretion, consistent with other sentencing decisions. The State counters that because the issue being appealed is the denial of the motion to clarify—not specifically a sentencing decision—we should instead review the denial for correctness. Because the district court's conclusion was based on its review of the written record, which we are in the same position to assess, we agree with the State and review the court's denial of the motion to clarify for correctness. *See State v. Jiminez-Wiss*, 2015 UT App 36, ¶ 15, 345 P.3d 743.

---

3. Judge Sean M. Petersen, who ruled on Thompson's motion to clarify, did not preside over the initial criminal proceedings.

¶12   Thompson also argues the district court plainly erred in accepting, and Counsel was ineffective in failing to object to, the prosecutor's alleged misstatement of the law regarding force or coercion in sex offenses. Claims of plain error and ineffective assistance of counsel present questions of law that we also review for correctness. *See State v. Samora*, 2022 UT App 7, ¶ 16, 504 P.3d 195, *cert. denied*, 525 P.3d 1254 (Utah 2022).

## ANALYSIS

¶13   Thompson filed a motion to clarify his sentence because he was required to register as a sex offender for life. *See* Utah Code Ann. § 77-41-105(3)(c)(ii) (LexisNexis 2023). But Utah Code section 77-41-105(3)(c)(iii)(A)—enacted after Thompson was sentenced—provided an exception to lifetime registration, stating that "[i]f the sentencing court at any time after conviction determines that the offense does not involve force or coercion, lifetime registration . . . does not apply to an offender who commits the offense when the offender is under 21 years old." If this exception applies, "the offender need only register for the duration of his or her sentence plus ten years." *State v. Lightel*, 2025 UT App 40, ¶ 10, 567 P.3d 610, *cert. denied*, 574 P.3d 523 (Utah 2025). *See* Utah Code Ann. § 77-41-105(3)(a), (3)(c)(iii)(A). Having completed his sentence and been registered as a sex offender for 10 years thereafter, Thompson sought to be removed from the registry. But the district court concluded that it could not make the necessary finding that Thompson's abuse of Anna did not involve force or coercion. Thompson raises two challenges to this conclusion. As hereafter explained, we are not persuaded by Thompson's arguments.

### I. Consideration of Improper Factors

¶14   Thompson first argues that the district court failed to consider certain relevant factors, including his version of events

as set forth in the plea agreement and the results of both the psychosexual evaluation and the polygraph examination he took shortly after the abuse. And he argues the court improperly relied on Anna's written statement to the police. But we see no error here.

¶15 First, Thompson provides no indication that the court did not consider the factors he urges it should have. The court had before it the record of the case. Although incomplete due to its vintage, the record included the plea agreement and the results of both the psychosexual evaluation and the polygraph examination. From this record, the court concluded it could not make a finding that Thompson's abuse of Anna did not involve force or coercion. True, the court specifically recognized Anna's statement, noting that the statement "does indicate and alleges that [Thompson] used force and/or coercion," and concluded that the facts therefore "preclude [Thompson] from receiving modification of his current lifetime registration requirement . . . as the Court cannot make a finding based upon its review that the offense does not involve force or coercion." But this shows that the court was swayed by Anna's statement—not that it "solely" relied on it, as Thompson argues.

¶16 Thompson further argues that because the plea agreement noted that Anna's statement contained "discrepancies," the statement was "irrelevant" and the court should not have considered it at all. But the plea agreement contained concessions made by both the State and Thompson. One of those was that the plea would be based on Thompson's version of events. *See State v. Yates*, 918 P.2d 136, 139 (Utah Ct. App. 1996) (noting that "in plea agreement cases, the 'facts' listed in final, often amended, charging documents follow from an agreed upon penalty" and that pleas "are entered based upon imaginary or fictional sets of facts") (quotation simplified). These facts were relevant for sentencing. But the plea

agreement and the facts contained therein did not limit the court's consideration of other facts in the record or otherwise constrain the determination that the court was required to make here.[4] This is so because both the plea agreement and Thompson's version of events were silent as to whether Thompson used force or coercion in "touch[ing] the victim's genitals with his hand."

¶17    Section 77-41-105(3)(c)(iii)(A) required the district court to make a finding on whether Thompson's abuse involved force or coercion. Given the silence of the plea agreement concerning force or coercion, we conclude that the court correctly considered the other materials in the record before it, including Anna's statement.

---

4. Relatedly, Thompson argues that the court's consideration of Anna's statement was a breach of the plea agreement—which, in his view, required the court to consider only his version of events. Thompson relies on this court's opinion in *State v. Yates*, 918 P.2d 136 (Utah Ct. App. 1996), wherein we stated that because a defendant pled guilty to theft, the court "should not have considered evidence or argument at sentencing about the actual value of the stolen property" because the "actual value is irrelevant after the State and the defendant have entered into a plea agreement." *Id.* at 139. But *Yates* is readily distinguishable, as it concerned the evidence the court considered at sentencing. And there, we held that the district court improperly considered evidence that explicitly contradicted the agreed-upon value set forth in the plea agreement. Here, in this unique post-sentencing posture, the court was required to determine whether Thompson's offense involved force or coercion. And the plea agreement was silent as to those factors. Thus, Thompson has not persuaded us that the district court breached the plea agreement by considering Anna's statement.

## II. Incorrect Statement of the Law

¶18   During oral argument on Thompson's motion to clarify, the prosecutor noted that Thompson was "charged with child sex offenses" and stated, "[I]f I'm not mistaken, I don't believe that the word 'force' appears in any elements of any child sex abuse statute: Rape of a child, object rape of a child, sex abuse of a child, aggravated sex abuse of a child." Thompson argues that the district court plainly erred in relying on this misstatement of law and, in the alternative, that Counsel was ineffective in failing to object to it. We disagree.

¶19   "Although plain error and ineffective assistance of counsel are distinct concepts, they each require the defendant to demonstrate that the alleged error or deficiency resulted in prejudice," meaning "that there is a reasonable probability that but for the alleged errors, the result of the proceeding would have been different." *State v. Haar*, 2021 UT App 109, ¶¶ 53–54, 500 P.3d 102 (quotation simplified). Because both claims "share a common standard of prejudice," the lack of such a showing "will prove fatal to each" claim. *Id.* ¶ 53 (quotation simplified).

¶20   We agree with Thompson that the prosecutor's statement was legally incorrect because, at the time he made the statement, "force, duress, violence, intimidation, coercion, menace, or threat of harm" were aggravating factors to a sexual abuse of a child charge. *See* Utah Code Ann. § 76-5-404.3(2)(a)(i)(B) (LexisNexis 2023). But we are not convinced that, absent this misstatement, the district court would have reached a different conclusion regarding whether Thompson's abuse of Anna involved force or coercion.

¶21   In determining whether an offense involves force or coercion in this context, the court cannot simply evaluate the statutory elements of the offense. *See State v. Lightel*, 2025 UT App 40, ¶ 20, 567 P.3d 610 (rejecting the defendant's argument that a

finding of force or coercion under section 77-41-105(3)(c)(iii)(A) is premised solely on the statutory elements of the offense at issue, as, in some cases, this would result in a defendant having to show "*only* . . . that he or she was under age twenty-one at the time of the crime," which would be "contrary to the legislature's plain mandate that a *two*-factored factual inquiry be employed before excepting an adult offender from otherwise-required lifetime registration") (emphases in original), *cert. denied*, 574 P.3d 523 (Utah 2025). Moreover, had the court looked to the statute here, it would be evaluating the elements of sexual abuse, which do not include force or coercion—not the elements of *aggravated* sexual abuse, which do. So any misstatement of the law regarding other sexual offenses did not affect the court's analysis of whether Thompson's sexual abuse of Anna involved force or coercion.

¶22　Thus, even without the prosecutor's misstatement of the law, there is no likelihood of the court reaching a different conclusion. Because Thompson has not shown that he was prejudiced, he "cannot succeed under the rubric of either plain error or ineffective assistance" and both claims fail. *Haar*, 2021 UT App 109, ¶ 54 (quotation simplified).

CONCLUSION

¶23　In addressing Thompson's motion to clarify, the district court properly considered the entire record before it, including Anna's written statement to the police. And Thompson has not shown that the court plainly erred insofar as it relied on the prosecutor's misstatement of the law regarding sexual offenses or that Counsel was ineffective in failing to object to it.

¶24　Affirmed.

────────────